## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | | |
|---|---|---|
| **TIMOTHY STANGER, On Behalf of Himself and All Others Similarly Situated,** | ) ) ) | |
| *Plaintiff,* | ) ) | **COLLECTIVE ACTION** |
| | ) | **CASE NO. 3:22-cv-00800** |
| **v.** | ) ) | **JUDGE TRAUGER** |
| **MARRIOTT HOTEL SERVICES, INC. d/b/a GAYLORD OPRYLAND RESORT & CONVENTION CENTER,** | ) ) ) ) | **JURY DEMAND** |
| *Defendant.* | ) ) | |

## MEMORANDUM IN SUPPORT OF
## PLAINTIFFS' UNOPPOSED MOTION FOR COURT APPROVAL OF FLSA
## COLLECTIVE ACTION SETTLEMENT AND DISMISSAL OF CLAIMS OF NAMED
## PLAINTIFF AND OPT-IN PLAINTIFFS WITH PREJUDICE

Named Plaintiff Timothy Stanger and all Opt-In Plaintiffs ("Plaintiffs"), through undersigned counsel,[1] Barrett Johnston Martin & Garrison, PLLC, submit this Memorandum in Support of their Unopposed Motion for Court Approval of FLSA Collective Action Settlement and Dismissal of Claims of Named Plaintiff and Opt-In Plaintiffs with Prejudice. The Parties' Settlement Agreement ("Settlement") is fair, adequate, and reasonable. The Court should therefore approve it.

## I.  INTRODUCTION

On October 10, 2022, Named Plaintiff Timothy Stanger, on behalf of himself and all others similarly situated, filed the initial complaint in this action in the United District Court for the

---

[1]  The Declaration of David W. Garrison has been submitted contemporaneously herewith. This Declaration is cited herein as "Garrison Decl. at __". The Settlement Agreement is cited herein as "SA at __".

Middle District of Tennessee against Defendant Marriott Hotel Services, Inc., d/b/a Gaylord Opryland Resort & Convention Center ("Defendant"), for violations of the minimum wage and overtime provision of the Fair Labor Standards Act ("FLSA"). (Doc. No. 1). Named Plaintiff filed an amended complaint on December 19, 2022. (Doc. No. 30). The principle allegations are violations of the "tip credit" provision of the FLSA and a failure to properly calculate the regular rate for overtime purposes when Plaintiffs received service charges. *E.g.*, *id.* at ¶¶ 1-5.

The Plaintiffs now move, without opposition, for approval of a Settlement that resolves all claims of current Plaintiffs and of those potential Opt-In Plaintiffs who choose to participate by filing a consent form pursuant to a Court-supervised notice process contemplated by the Settlement. This Settlement provides substantial relief to Plaintiffs and to potential Opt-In Plaintiffs who will be afforded an opportunity to join as part of a settlement notice. The Settlement is the result of direct negotiations between the Parties during an all-day mediation with Michael Russell on May 24, 2023, and was consummated on June 29, 2023. Garrison Decl. at 14.

## II. FACTUAL AND PROCEDURAL HISTORY

Early in this action, the Parties quickly recognized that they have several substantive disputes. These disputes include, but are not limited to: (1) whether Defendant improperly designated service charges as customer tips when paying Plaintiffs and other similarly situated employees (thereby improperly calculating their overtime rate); (2) whether, and to what extent, Defendant's practices with regard to tracking tips and service charges made reliance on the "tip credit" inappropriate; (3) whether, and to what extent, Plaintiffs and other similarly situated employees received the notice required for Defendant to rely on the "tip credit" to meet the minimum wage; (4) whether, and to what extent, the performance of non-tip-producing activities by Plaintiffs and other similarly situated employees made reliance on the "tip credit" inappropriate;

2

(5) whether Defendant acted in good faith and with a reasonable belief that its practices complied with the FLSA, such that the Court should reduce or disallow liquidated damages; and (6) whether Defendant acted willfully, such that a three-year statute of limitations applies.

Following the filing of Plaintiffs' motion seeking notice to potential Plaintiffs pursuant to 29 U.S.C. § 216(b) on February 2, 2023 (Doc. No. 37), the parties reached an agreement to engage in mediation in an effort to reach a negotiated resolution of this action. The parties filed a Joint Stipulation and Joint Motion to memorialize their agreement and seek procedural relief to accommodate their planned mediation, in particular the extension of the briefing schedule for Plaintiffs' request for 216(b) notice and tolling for potential Opt-In Plaintiffs. (Doc. No. 44). The parties exchanged considerable data and documents, including payroll and timekeeping data for more than 300 Plaintiffs and potential Plaintiffs, to equip them to evaluate the claims and defenses in this action. Following their all-day mediation and weeks of direct negotiation to finalize the settlement, the Parties ultimately entered into the written Settlement before the Court. The Settlement resolves the claims of the Plaintiffs and provides for a Settlement notice process that will permit potential Plaintiffs to submit their written consent to join this action and thereby participate in the Settlement. *See* SA at ¶¶ 6-7 and Ex. B.

The Parties believe that their Settlement is fair and reasonable in light of the experience of Plaintiffs' counsel in other wage-and-hour cases, as well as the risks, uncertainties, and costs of several years of additional litigation absent the Settlement.

## III. SETTLEMENT TERMS

A summary of the principal terms of the Parties' Settlement is set forth below. In exchange for Defendant's agreement to pay a Gross Settlement Amount of $300,000 (not including the employer share of taxes, costs of settlement administration costs and fees, and the costs and fees

associated with the Parties' mediation), Plaintiffs and Opt-In Plaintiffs have agreed to waive and release the Defendant from wage-and-hour claims related to the conduct challenged in this action. SA at ¶¶ 1(e), (i), (j). Importantly, this release only covers the period through October 1, 2022, as Defendant contends that, even if Plaintiffs were correct that its prior conduct violated the FLSA (which it disputes), it eliminated the use of the tip credit effective October 2022, and similarly no liability exists after October of 2022 for any other allegations not related to use of the tip credit, as a result of which there is no liability for the claims Plaintiffs have asserted in this action after October 2022. SA at ¶ 1(i).

This $300,000.00 is allocated as follows: (1) $100,000.00 (*i.e.*, one-third of the settlement fund) for Plaintiffs' counsel's attorneys' fees; (2) $8,104.40 for Plaintiffs' counsel's incurred costs and expenses; (3) $3,000.00 to Named Plaintiff Stanger as a service payment for his service as a representative Named Plaintiff in this collective action; and (4) the remaining $188,895.60 to Plaintiffs and those who file their written consent to join this action pursuant to a settlement notice process. SA at ¶¶ 1(e), 4.

Exhibit D to the Settlement sets forth the estimated allocation of these funds to all Plaintiffs, including potential Plaintiffs who will receive a notice of their right to participate in this Settlement should they choose to do so. The estimate allocation assumed $10,000.00 for Plaintiffs' recovery of expenses. However, to date, Plaintiffs have incurred only $8,104.40 in expenses, and therefore only seek Court approval of a recovery of expenses in that amount. Plaintiff will work with the Settlement Administrator to adjust the Plaintiffs' individual settlement recovery based on this lower expenses amount, while maintaining their same pro rata recovery.

For the Opt-In Plaintiffs who have already joined this action, their opt-in date was the date used for tolling purposes for the calculation of their settlement damages. For potential Plaintiffs,

4

the February 15, 2023 (*i.e.*, the date of the Parties' stipulation regarding tolling) is the date used for tolling purposes for the calculation of their settlement damages. *Id.*

The estimated allocation (which assumes the other portions of the monetary provisions of the Settlement are approved), includes an allocation of a minimum amount of $25.00 to all Plaintiffs and potential Plaintiffs, then the remainder allocated *pro rata* based on their actual damages calculations using the three-year, FLSA statute of limitations. Under the Settlement, each Plaintiff and each potential Plaintiff who files a consent form as part of the Settlement Notice process will receive a settlement payment calculated *pro rata* based on these amounts that is divided equally between a payment for wages and a payment for liquidated damages.

The Settlement provides that, on or before the Effective Date, which is 35 days after the Court's order approving this Settlement assuming that there is no appeal, Defendant is to fund the Qualified Settlement Fund that is set up by the Settlement Administrator[2] for the Settlement. SA at ¶¶ 1(c), 8(a). If there is an appeal, this deadline is 35 days from the expiration of any appeal period. *Id.* The Settlement provides that the Settlement Administrator is to issue the checks to Plaintiffs who have already joined this case within 14 days of the receipt of the settlement funds, and to those who join following an order approving this Settlement as part of the Settlement's notice process, within 21 days following the close of the notice period. SA at ¶ 8(a).

For the 315 potential Plaintiffs (defined in the Settlement as "Potential Collective Members," SA at ¶ 1(g) and Ex. A), the Parties have agreed upon a notice process to allow them to participate in this Settlement. The Settlement contemplates that notice will be mailed and emailed to potential Plaintiffs. SA at ¶ 7. Within 30 days of the Parties' execution of the agreement

---

[2] The Parties have selected Rust Consulting, Inc. ("Rust") as the Settlement Administrator for this case. SA at ¶ 1(b).

on June 29, 2023, Defendant is required to provide a notice list to the Settlement Administrator, Rust. *Id.* Rust is then responsible for sending the notice attached as Exhibit B to the Settlement via U.S. Mail and email and the notice attached as Exhibit C via text message. *Id.* The potential Plaintiffs will have 60 days from the date notice is sent to return their written consent to join this action and participate in the Settlement. *Id.* The Settlement notice will inform them of the amount of their settlement payment, the nature of the action, the relevant deadlines, and the effects of joining and not joining, among other information. SA at Ex. B.

## IV.  THE PARTIES' SETTLEMENT SHOULD BE APPROVED

### A.  Standard for Approval of Settlement of FLSA Collective Actions

In the context of a private lawsuit brought under 29 U.S.C. § 216(b), a plaintiff may settle and release FLSA claims against a company if the parties present the district court with a proposed settlement, and the district court enters a stipulated judgment approving the fairness of the settlement. *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982). In reviewing a settlement of a private FLSA claim, the court reviews the proposed settlement to determine whether it is a "fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Id.* at 1355; *see also Bartlow v. Grand Crowne Resorts of Pigeon Forge*, 2012 WL 6707008, at *1 (E.D. Tenn. Dec. 26, 2012); *Wills v. Cellular Sales of Tenn., LLC*, 2014 WL 8251539, at *1 (E.D. Tenn. Aug. 18, 2014); *Simmons v. Mathis Tire & Auto Serv., Inc.*, 2015 WL 5008220, at *1 (W.D. Tenn. Aug. 20, 2015). When it appears that a settlement "reflect[s] a reasonable compromise over issues, such as FLSA coverage or computation of back wages[] that are actually in dispute," the Court should "approve the settlement in order to promote the policy of encouraging settlement of litigation." *Lynn's Food Stores*, 679 F.2d at 1354. Moreover, a court presiding over an FLSA suit "shall, in addition to any judgment awarded to the plaintiff or

plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b).

### B. A Bona Fide Dispute Exists Over Liability and Damages

In reviewing the settlement of a plaintiff's FLSA claims, the district court must "'ensure that the parties are not, via settlement of [the] claims, negotiating around the clear FLSA requirements of compensation for all hours worked, minimum wages, maximum hours, and overtime.'" *Rotuna v. W. Customer Mgmt. Grp. LLC*, 2010 WL 2490989 at \*5 (N.D. Ohio June 15, 2010) (citation omitted). The existence of a *bona fide* dispute serves as a guarantee that the parties have not manipulated the settlement process to permit the employer to avoid its obligations under the FLSA. *Id.*; *Ochs v. Modern Design, Inc*., 2014 WL 4983674, at \*2 (N.D. Ohio Oct. 6, 2014).

As noted above, the Parties have sharply differing views on the substantive disputes in this case, of which there are many. Hence, there can be no question that the Parties' Settlement resolves *bona fide* disputes under the FLSA and contains terms that seek to avoid further protracted and hotly contested litigation. *See Lynn's Food Stores, Inc*., 679 F.2d at 1354 ("Thus, when the parties [to the litigation] submit a settlement to the court for approval, the settlement is more likely to reflect a reasonable compromise of disputed issues than a mere waiver of statutory rights brought about by an employer's overreaching.").

### C. The Parties' Settlement Agreement is Fair, Reasonable, and Adequate

Having found a bona fide dispute, a court next considers whether the settlement is "a fair and reasonable resolution of [that] bona fide dispute." 29. U.S.C. §216(b). The Sixth Circuit has identified several factors to be balanced when evaluating the fairness and reasonableness of a settlement: "(1) the risk of fraud or collusion, (2) the complexity, expense and likely duration of

7

the litigation, (3) the amount of discovery engaged in by the parties, (4) the likelihood of success on the merits, (5) the opinions of class counsel and class representatives, (6) the reaction of absent class members,[3] and (7) the public interest." *Does 1-2 v. Déjà vu Services, Inc.*, 925 F.3d 886, 894 (6th Cir. 2019) (citing *Int'l Union, United Auto., Aerospace, & Agric. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007)).

First, there is absolutely no risk of fraud or collusion between the Parties or of a concerted effort to evade the provisions of the FLSA. The nature of the litigation and the excellent results achieved show that the Settlement is not the result of fraud and collusion. Moreover, the fact that the Parties settled with the assistance of a well-respected mediator's guidance and supervision validates the *bona fide* nature of the Parties' Settlement. *See Hainey v. Parrott*, 617 F. Supp. 2d 668, 673 (S.D. Ohio 2007) ("The participation of an independent mediator in the settlement negotiations virtually insures that the negotiations were conducted at arm's length and without collusion between the parties.").

Second, the complexity, expense, and likely duration of the litigation had the Parties not settled weighs heavily in favor of finding that this Settlement is fair and reasonable. It is no secret that "[e]mployment cases in general, and wage-and-hour cases in particular, are expensive and time-consuming." *Daoust, et al. v. Maru Restaurant, LLC*, *et al.*, 2019 WL 2866490 at *2 (E.D. Mich., July 3, 2019). The Parties continue to have strong disagreements over the merits of Plaintiffs' claims. Garrison Decl. at ¶¶ 11-12. If forced to litigate this case further, the Parties

---

[3] Because this is not a Rule 23 class action settlement, there are no absent class members. Accordingly, this factor is not as applicable to cases like this one where the Opt-In Plaintiff Collective Members are represented by counsel and have authorized the Named Plaintiff and his counsel to negotiate a settlement on their behalf. Still, as addressed more below, the reaction of the Opt-In Plaintiff Collective Members has been positive. Moreover, Named Plaintiff believe this Settlement is an excellent result.

8

would certainly engage in complex, costly, and protracted litigation over numerous issues. *Id.*

Without question, if the case had not settled, the Parties would have spent significant time and resources completing the briefing of notice, taking depositions, and drafting discovery motions, dispositive motions, and trial-related motions. Garrison Decl. at ¶ 11. Thereafter, the Parties faced the prospect of an expensive, lengthy jury trial, as well as inevitable post-trial motions and appeals. *Id.* Even if Plaintiffs were successful on the merits of their claims, Defendant intended to dispute the amount that would be due to them, making the amount of their recovery uncertain. *Id.* The Settlement eliminates these burdens and hurdles, and, thus, weighs in favor of approval. In other words, this recovery reflects the risk that the Plaintiffs and potential Plaintiffs would have faced had they proceeded through dispositive motions and trial. *Id.*

Third, the Parties have engaged in discovery focused on evaluating their claims and defenses. *Id.* Specifically, the Parties have conducted sufficient discovery to permit them and their experienced counsel to collect, obtain, and review evidence, evaluate their claims and defenses, understand the scope of potential damages, and appreciate the risks involved in continued litigation. *Id.* This included the production, review, and analysis of the payroll and time records of the Plaintiffs as well as more than 300 potential Plaintiffs. *Id.*

Fourth, given the number of legal and factual issues which remain, the likelihood of success on the merits is by no means certain for either party. "Litigation inherently involves risks." *In re Painewebber Ltd. P'ships Litig.,* 171 F.R.D. 104, 126 (S.D.N.Y. 1997). Moreover, the range of possible recovery was uncertain. Approval of the Settlement provides substantial compensation for the Plaintiffs and potential Plaintiffs while eliminating the risks of continued litigation. Garrison Decl. at ¶ 12. "Class counsel and the class representatives may compromise their demand for relief in order to obtain substantial assured relief for the plaintiffs' class." *See Williams, et al.*

*v. Vukovich, et al.*, 720 F.2d 909, 922 (6th Cir. 1983).

Fifth, Plaintiffs' counsel and Named Plaintiff Stanger approve the Settlement. Garrison Decl. at ¶ 12. Plaintiffs' counsel are highly experienced in wage-and-hour class actions, have acted in good faith, and have represented their clients' best interests and followed their wishes in reaching the Settlement. Garrison Decl. at ¶¶ 4-8. Based upon their experience handling complex class and collective action cases, Plaintiff's counsel believe that the Settlement is fair and reasonable, Garrison Decl. at ¶¶ 4-8, 12, which weighs heavily in favor of approving the settlement. *Williams et al. v. Vukovich et al.,* 720 F. 2d at 922-23 ("The court should defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs.").

Lastly, the Sixth Circuit has recognized that "the law generally favors and encourages the settlement of class actions." *Franks v. Kroger Co.*, 649 F.2d 1216, 1224 (6th Cir. 1981); *Pelzer v. Vassalle*, 655 F. App'x 352 (6th Cir. 2016) ("It is axiomatic that the settlement of class-action litigation is favored."). Approval of the Settlement not only preserves scarce judicial resources by furthering the public interest in settlement, it also furthers the remedial and humanitarian policies underlying the FLSA.

### D. The Parties' Settlement Agreement Confers Substantial Benefits on the Class

A strong indicator of the fairness, reasonableness, and adequacy of the Settlement is the substantial benefits being conferred on Plaintiffs and potential Plaintiffs. Here, the Settlement of $300,000.00 represents a substantial recovery in relation to the wages allegedly owed to the Plaintiffs and potential Plaintiffs under the FLSA. Garrison Decl. at ¶ 12. It is a court's responsibility to ensure that the distribution of the settlement proceeds is equitable and does not unfairly favor or disfavor certain class members. *See Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 855 (1999). Equity does not dictate, however, that the distribution be made purely on a pro-rata basis.

*See UAW v. GMC*, 497 F.3d 615, 628 (6th Cir.2007) (citing *Ortiz*, 527 U.S. at 855) ("Neither the Federal Rules of Civil Procedure nor the Supreme Court requires that settlements offer a pro rata distribution to class members; instead the settlement need only be 'fair, reasonable, and adequate.'"). Nevertheless, the distribution methodology utilized in this case is being done on a *pro rata* basis, as explained above. This method is the one most commonly utilized in wage-and-hour cases and is judicially recognized as fair and equitable. *See, e.g., Rotuna et al. v. West Customer Management Group, LLC*, 2010 WL 2490989 at *6 (N.D. Ohio, June 15, 2010) ("The Court approves the method of calculation and proposed distribution of settlement payments as fair and equitable. The total Settlement Payment, after deduction of the service awards to the Representative Plaintiffs and attorneys' fees and expense reimbursements to Plaintiffs' counsel and the Class Administrator, is to be distributed to the Collective Members, which are to be calculated on a proportional basis based on the individuals' relevant workweeks and shifts during the [Class Period].").  Moreover, current Plaintiffs will not be required to sign claim forms or jump through other hoops to participate in the Settlement. Rather, they will simply be sent settlement checks calculated based on the above-described formula.

### E.  Arm's Length Mediation and Mediator's Settlement Proposal

This Settlement was reached as a result of arm's length negotiations through mediation conducted by Michael Russell. Garrison Decl. at ¶¶ 11-12. The involvement of mediator Michael Russell, a well-respected third-party neutral who is exceptionally well-versed in FLSA actions, in assisting the Parties to resolve their differences is a further indicator that the Parties' Settlement is fair and reasonable. *Id.*; *see also Hainey v. Parrot*, 617 F.Supp.2d 668, 673 (S.D. Ohio 2007) ("The participation of an independent mediator in the settlement negotiations virtually assures that the negotiations were conducted at arm's length and without collusion between the parties.").

11

**F. The Service Award to Named Plaintiff is Fair and Reasonable**

"Courts routinely recognize and approve incentive awards for class representatives and deponents" for the services they provided and the risks they incurred during the course of the class action litigation. *See, e.g., Wineland, et al. v. Casey's General Stores, et. al.,* 267 F.R.D. 669, 677 (S.D. Iowa 2009); *Nelson, et al., v. York County,* 382 F. Supp. 2d 206, 226 (D.C. Maine 2005) (seventeen class members who were deposed received incentive payments to recognize the time and effort they expended in preparing for and attending the deposition); *Huguley v. Gen. Motors Corp.,* 128 F.R.D. 81, 85 (E.D. Mich. 1989) (approving enhancement award of $322,496.00 to eighty-eight anecdotal witnesses and named plaintiffs because the "named plaintiffs and witnesses are entitled to more consideration than class members generally because of the onerous burden of litigation they have borne").

Here, the proposed service payment to Named Plaintiff Stanger of $3,000 is reasonable, in light of service payments approved by courts in similar FLSA collective action settlements, which are often considerably larger. *See Wineland, et al. v. Casey's General Stores, et. al.,* 267 F.R.D. 669, 677 (S.D. Iowa 2009) (awarding $10,000.00 service award to representative plaintiff in FLSA suit); *Johnson v. Midwest Logistics Sys., Ltd.*, 2013 WL 2295880, at *5 (S.D. Ohio May 24, 2013) (approving service payment of $12,500 to the named plaintiff); *Johnson v. Midwest Logistics Sys., Ltd.*, 2013 WL 2295880, at *5 (S.D. Ohio, May 24, 2013) (approving a $12,500 enhancement award to the named plaintiff from a $452,380 settlement); *Brandenburg v. Cousin Vinny's Pizza, LLC*, 2019 WL 6310376, at *8 (S.D. Ohio, Nov. 25, 2019) (approving a service award of $10,000); *Arledge v. Domino's Pizza, Inc*., 2018 U.S. Dist. LEXIS 179474, at *17 (S.D. Ohio Oct. 17, 2018) (approving $10,000 service award because "Plaintiff contributed his efforts to the lawsuit and only through Plaintiff's efforts did a large group of low-wage workers receive a substantial award" that

"furthered the important public policies underlying the" FLSA); *Salinas v. U.S. Xpress Enters., Inc.*, 2018 U.S. Dist. LEXIS 50800, at *26 (E.D. Tenn. Mar. 8, 2018) (approving a service award of $10,000); *Owner-Operator Indep. Drivers Ass'n v. Arctic Express, Inc.*, 2016 U.S. Dist. LEXIS 128819, at *7 (S.D. Ohio Sept. 21, 2016) (approving two service awards of $25,000); *Davidson v. Henkel Corp.*, 2015 U.S. Dist. LEXIS 195088, at *3 (E.D. Mich. Dec. 8, 2015) (approving $15,000 service award for the named plaintiff).

This proposed service payment reflects appropriate compensation for the services and sacrifices by Mr. Stanger. Garrison Decl. at ¶¶ 13, 23-24. Mr. Stanger initiated this lawsuit and led the organization and outreach to potential Opt-In Plaintiffs from its inception and took risk in filing this action while he was a current employee. *Id.*; *cf. Bellinghausen v. Tractor Supply Company*, 306 F.R.D. 245, 267 (N.D. CA. 2015) ("Incentive awards are particularly appropriate in wage-and-hour actions where plaintiffs undertake a significant 'reputational risk' by bringing suit against their former employers."). And, he spent hours on this case, assisting counsel in their investigation and litigation strategy. *Id.* He also participated in the day-long mediation with Mr. Russell and was involved in the negotiation of the written Settlement that was ultimately reached. *Id.*

## V. AGREED-UPON FEES, COSTS, AND EXPENSES SHOULD BE APPROVED

The Settlement provides that Plaintiffs may petition the Court for payment of $100,000.00 for attorneys' fees and for expenses and costs incurred, for which they seek $8,104.40.

To date, Plaintiffs' counsel has incurred $8,104.40 in costs and expenses. Garrison Decl. at ¶ 15. The FLSA expressly contemplates a mandatory award of costs under 29 U.S.C. § 216(b). Courts routinely approve such costs as part of a common fund settlement, considering whether the costs are of the type typically billed by attorneys to paying clients in the marketplace. *See Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) ("Harris may recover as part of the award of attorney's

fees those out-of-pocket expenses that 'would normally be charged to a fee paying client.'") (citation omitted); *Calderon v. Witvoet*, 112 F.3d 275 (7th Cir. 1997) (holding that travel and meal expenses are reimbursable as part of the award for attorneys' fees because travel and meal expenses are typically included in billings for an attorneys' professional services); *Wales v. Jack M. Barry, Inc.*, 192 F. Supp. 2d 1313 (M.D. Fla. 2001) (finding travel, meals, lodging, photocopying, long-distance telephone calls, computer legal research, postage, courier service, etc., recoverable under the FLSA as part of an attorneys' fee award). All of the costs in this action were or are reasonable and necessary in connection with litigating and resolving this case and are reimbursable, including costs incurred by Plaintiffs' counsel. Garrison Decl. at ¶ 21.

Plaintiffs seek approval of $100,000.00 (*i.e.*, one-third of the settlement fund) as compensation for their attorneys' fees. "[C]ourts within this circuit have found one-third common fund attorney's fee awards to be reasonable in similar complex failure-to-pay-overtime cases." *Ware v. CKF Enterprises, Inc.,* 2020 WL 2441415, at *15 (S.D. Ky., May 5, 2020); *see Hebert v. Chesapeake Operating, Inc.*, 2019 WL 4574509, at *8 (S.D. Ohio, Sept. 20, 2019) (finding "33% is typical for attorney's fees in common fund, FLSA collective actions"). Indeed, this Court has approved one-third common fund attorneys' fee award to be reasonable for FLSA wage and hour collective action settlements. *See, e.g.*, Order (Doc. No. 142) *Cayton v. Metro. Gov't of Nashville & Davidson County*, No. 3:20-cv-859 (M.D. Tenn.) (approving one-third of common fund in settlement of FLSA collective action); *Hawkins v. Middle Tennessee Pizza, Inc.*, 2022 WL 337197 (M.D. Tenn. Jan. 19, 2022) (approving attorneys' fees equaling one-third of each approved settlement fund, including a Collective Fund and Reserve Fund); *Barbee v. NaviHealth Inc.*, 2020 WL 6365515 (M.D. Tenn., Sept. 21, 2020) (awarding fees equal to 33.33% of the total settlement value).

District courts in the Sixth Circuit may calculate an award of attorneys' fees in common fund cases using either a percentage-of-the-fund calculation or a lodestar approach. *See Rawlings v. Prudential-Bache Propsl, Inc.,* 9 F.3d 513, 517 (6th Cir. 1993) ("[W]e conclude that use of either the lodestar or percentage of the fund method of calculating attorney's fees is appropriate in common fund cases…"); *Rotuna et al. v. West Customer Management Group, LLC*, 2010 WL 2490989 at *7 (N.D. Ohio, June 15, 2010) (noting in FLSA case that "[d]istrict courts within the Sixth Circuit have the discretion to select one of two methods for calculating an award of attorneys' fees in a common fund case by using either a percentage of the fund calculation or a lodestar multiplier"). The primary consideration in this Circuit is that the award "be reasonable under the circumstances." *Rawlings,* 9 F.3d at 516. The percentage of the fund method is particularly appropriate where the result achieved for the class is substantial, and class counsel undertook the representation on a contingent fee basis and advanced significant labor and expenses to litigate the case. *See Friske v. Bonnier Corporation*, 2019 WL 5265324, at *2 (E.D. Mich., Oct. 17, 2019).

For the reasons set forth below, Plaintiffs' counsel submits that their requested fee, expenses, and cost payments are reasonable, and should be approved.

### A. Standard for Assessing Fee Awards in the Sixth Circuit – the *Ramey* Factors

The Sixth Circuit has identified six considerations that enter into the determination of reasonable fees by a court including: (1) the value of the benefit rendered to the class; (2) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others; (3) whether the services were undertaken on a contingent fee basis; (4) the value of the services on an hourly basis; (5) the complexity of the litigation; and (6) the professional skill and standing of all counsel. *See Ramey v. Cincinnati Enquirer, Inc.,* 508 F.2d 1188, 1196 (6th Cir. 1974). Application of these factors merit approval of the fees, costs, and expenses set forth in the Parties'

Settlement.

### B. Application of the *Ramey* Factors

#### 1. Value of the Benefits Achieved

The Supreme Court has instructed that "the most critical factor" governing the reasonableness of a fee award "is the degree of success obtained." *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983). In cases when "a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee." *Id*. at 435. "'When awarding attorney's fees in a class action, a court must make sure that counsel is fairly compensated for the amount of work done as well as for the results achieved.'" *Gascho v. Global Fitness Holdings, LLC*, 822 F.3d 269, 279 (6th Cir. 2016) (quoting *Rawlings v. Prudential-Bache Properties, Inc.*, 9 F.3d 513, 516 (6th Cir. 1993)). As already explained above, the results achieved for the Plaintiffs and potential Plaintiffs here are exceptional, especially considering the defenses Defendant was likely to raise and the attendant expense, risks of non-recovery or partial recovery, difficulties, delays, uncertainties of continued judicial proceedings, and the inevitable post-trial proceedings. In sum, the Settlement brings meaningful and certain monetary value to Plaintiffs and potential Plaintiffs in the immediate future, as opposed to uncertain recovery down the road. Garrison Decl. at ¶¶ 11-12.

#### 2. Public Policy Considerations

"If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA coverage or computation of back wages that are actually in dispute; we allow the district court to approve the settlement in order to promote the policy of encouraging settlement of litigation." *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982). *Accord, Crawford v. Lexington-Fayette Urban Cty. Gov't*, 2008 WL 4724499, at *9 (E.D. Ky. Oct. 23, 2008) ("Given the uncertainty surrounding a possible trial in this matter, the certainty and finality that comes with settlement also weighs in favor of a ruling approving the agreement" since

16

"such a ruling promotes the public's interest in encouraging settlement of litigation."). The policy favoring the settlement of collective and/or class actions applies with particular force here. "Employment cases in general, and wage-and-hour cases in particular, are expensive and time-consuming." *Daoust, et al. v. Maru Restaurant, LLC, et al.*, 2019 WL 2866490 at *2 (E.D. Mich., July 3, 2019). The Parties' Settlement provides substantial benefits to Plaintiffs and potential Plaintiffs promptly and efficiently and amplifies the benefits of that relief through the economies of collective resolution and preservation of scarce judicial resources.

Where relatively small claims can only be prosecuted through aggregate litigation, "private attorneys general" play an important role. *Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 338-39 (1980). Attorneys who act as private attorneys general and further the public interest must be adequately compensated for their efforts. *See Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 51 (2nd Cir. 2000) (commending the "sentiment in favor of providing lawyers with sufficient incentive to bring common fund cases that serve the public interest."). Moreover, "[s]ociety's stake in rewarding attorneys who bring class action wage and hour cases favors the requested award." *Gentrup v. Renovo Servs., LLC*, 2011 WL 2532922, at *4 (S.D. Ohio June 24, 2011); *accord. Kritzer v. Safelite Solutions, LLC*, 2012 WL 1945144, at *9 (W.D. Ohio, Sept. 30, 2013) ("The second factor, society's stake in rewarding attorneys who produce such benefits, also favors the proposed attorney-fee award. The attorney-fee award proposed in this case, though substantial, must be viewed in conjunction with the substantial award garnered in favor of the class. Society has a stake in rewarding attorneys who achieve a result that the individual class members probably could not obtain on their own").

### 3. Plaintiffs' Counsel's Services were Rendered on a Contingency Fee Basis

Plaintiffs' counsel undertook this litigation on a contingency fee basis, agreeing to front the considerable costs certain to be incurred in a sizable FLSA collective action case. Garrison

Decl. at ¶ 22. As such, Plaintiff's counsel risked receiving no reimbursement for the costs they incurred and the time expended for their services in the event counsel did not prevail. *Id.* Unlike counsel who defend FLSA collective actions and who are paid regularly throughout the course of a case regardless of outcome, Plaintiffs' counsel have received no compensation for their work on behalf of the Plaintiffs and potential Plaintiffs over the course of this litigation. *Id.*

Courts have consistently recognized that the risk of receiving little or no recovery is a major factor in considering an award of attorneys' fees. *See e.g., Willix v. Healthfirst, Inc.,* 2011 U.S. Dist. LEXIS 21102, at *18 (E.D.N.Y. Feb 18, 2011) (finding that where class counsel took on contingency risk of non-payment, a percentage-of-recovery fee award of 33.33% was "presumptively reasonable."). Thus, the award of fees Plaintiffs seek here is entirely appropriate given the outstanding results obtained and contingent risk undertaken by Plaintiffs' counsel. *See Friske v. Bonnier Corporation*, 2019 WL 5265324, at *2 (E.D. Mich. Oct. 17, 2019) ("The percentage of the fund method is appropriate here for evaluating the reasonableness of the attorney fee since the result achieved for the class in terms of the cash payments to be made from the fund was substantial, and class counsel undertook the representation on a contingent fee basis and advanced significant labor and expenses to litigate the case. And the percentage award requested is appropriate to compensate class counsel adequately for the risk inherent in that contingent fee representation."); *Barbee*, 2020 WL 6365515 (awarding fees equal to 33.33% of the total settlement value).

### 4. A Lodestar Cross-Check Supports the Requested Fee

Performance of a lodestar cross-check is not required but, rather, is optional. "Performing a cross-check of the attorney-fee request using Class Counsel's lodestar is optional." *Feiertag v. DDP Holdings, LLC,* 2016 WL 4721208, at *7 (S.D. Ohio Sep. 9, 2016); *see also Dillow v. Home*

*Care Network, Inc*., 2018 WL 4776977, at *6 (S.D. Ohio Oct. 3, 2018) (lodestar cross-check of percentage of the fund fee award is "unnecessary"). Indeed, review of agreed-upon attorneys' fees in a settlement agreement, as opposed to a contested fee application, merits a certain level of deference to the parties' agreement. *See, e.g., Melgar v. O.K. Foods*, 902 F.3d 775, 779 (8th Cir. 2018) ("Even assuming the district court had a duty to review the Agreement, at some level, for fairness and reasonableness, review of attorneys' fees included in a settlement agreement requires a certain level of deference by the district court to the parties' agreement."); *Fisher v. S.D. Protection, Inc.*, 948 F.3d 593, 606 (2nd Cir. 2019) ("Where the issue of fees and costs is presented in the context of a complete settlement agreement that includes an agreement with respect to fees and costs...[as opposed to a fee application] the inquiry is different as the settlement is submitted for approval, not adjustment or revision.").

Nevertheless, here, a cross-check of the attorney-fee request using Plaintiffs' counsel's lodestar weighs heavily in favor of granting the requested fees. Barrett Johnston Martin & Garrison, PLLC's cumulative lodestar, through February 13, 2023, is $104,402.00.[4] *See* Garrison Decl. at ¶ 15. Plaintiff's counsel's hourly rates are based on reasonable rates used in the Nashville market, and they are rates that they have submitted to justify their fees in FLSA collective action settlements before this Court as well as federal district courts throughout the country. Garrison Decl. at ¶¶ 17-19.

Plaintiffs request that the Court authorize $100,000.00 for payment of their fees. The requested fee represents a reduction of approximately five percent (5%) from the $104,402.00 in attorneys' fees actually incurred. Garrison Decl. at ¶ 15. Of course, in reality, the fee earned will

---

[4] The hourly rates used in the lodestar are $525 an hour for David Garrison, Partner; $385 an hour for Joshua Frank, Senior Associate; $285 an hour for Nicole Chanin, Associate; and $175 an hour for professional staff. Garrison Decl. at ¶ 17.

19

be less than this amount, since Plaintiff's counsel will continue to incur fees and costs during the administration of this settlement process. *Id.*

Under Sixth Circuit law, Plaintiffs' counsel's request for fees in the amount of $100,000.00 is therefore reasonable under the circumstances and should be approved. "A percentage-of-the-fund attorneys' fee award is reasonable when it amounts to double the loadstar attorneys' fees incurred by the plaintiffs' counsel." *Osman v. Grube Inc.*, 2018 WL 2095172, at *3 (N.D. Ohio, May 4, 2018); *see also Barbee*, 2020 WL 6365515 (approving common fund settlement with a fee award of a 2.1 multiplier). "In wage and hour collective and class actions, lodestar multipliers between 1 and 3 are common." *Fitzgerald v. P.L. Marketing*, 2020 WL 3621250, at *10 (W.D. Tenn., July 20, 2020); *see also Arledge v. Domino's Pizza, Inc.,* 2018 WL 5023950, at *5 (S.D. Ohio Oct. 17, 2018) (approving award of attorney's fees in wage and hour collective and class action at a 2.57 lodestar multiplier); *Castillo v. Morales, Inc.,* 2015 WL 13021899, at *7 (S.D. Ohio Dec. 22, 2015) (approving award of attorneys' fees in wage-and-hour collective and class action at a lodestar multiplier of approximately 2.5, which "is typical of lodestar multipliers in similar cases"). Here, the fact that this recovery represents a reduction in fees confirms its reasonableness.

### 5. The Litigation was Complex

Wage-and-hour collective and class actions are, by their very nature, complicated, time-consuming, and expensive to litigate. *See Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 479–80 (S.D.N.Y.2013). "FLSA claims typically involve complex mixed questions of fact and law." *Barrentine v. Arkansas–Best Freight Sys., Inc.*, 450 U.S. 728, 743 (1981); *accord. Hebert v. Chesapeake Operating, Inc.*, 2019 WL 4574509, at *5 (S.D. Ohio, Sept. 20, 2019) ("FLSA collective and class matters are inherently complex."); *Gentrup v. Renovo Servs., LLC*, 2011 U.S. Dist. LEXIS 67887, at *4 (S.D. Ohio, June 24, 2011) ("Society has a stake in rewarding the efforts

of the attorneys who bring wage and hour cases, as these are frequently complex matters.").

Litigation of this case through trial would be complex, expensive, and long, and the Plaintiffs' likelihood of success far from certain. While doable, prevailing on multiple, hotly-contested procedural and substantive issues, and proving liability and damages at trial for potentially hundreds of Plaintiffs would present several challenges. And, the Parties sharply disagree on numerous issues that would remain contested. Garrison Decl. at ¶ 11. In short, the claims and defenses in this suit have been and would continue to be vigorously contested, and the factual and legal complexities make the Plaintiffs' likelihood of prevailing on the merits anything but clear-cut, such that a settlement at this juncture is highly desirable.

### 6. The Professional Standing and Skill of Counsel

Plaintiffs' counsel has served as lead counsel in dozens of wage-and-hour class and collective action cases throughout the United States, including before this Court. Garrison Decl. at ¶¶ 4-8. Through these cases, Plaintiffs' counsel has recovered millions of dollars through settlements and judgments for employees in a variety of industries. *Id.* The excellent results achieved for the Settlement Collective Members here and in other wage-and-hour cases are undoubtedly in part the product of Plaintiffs' counsel's reputation and track record of success. Garrison Decl. at ¶¶ 4-8, 12. Similarly, defense counsel are well-matched, with significant expertise in defending employment litigation, with approximately 900 lawyers across 17 offices (*see* [www.seyfarth.com](www.seyfarth.com)), ensuring that the Settlement reached here is a bona fide, arm's length resolution.

### VII. CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court grant their Motion and enter an Order approving the terms of the Parties' Settlement Agreement, including the requested service payment for Named Plaintiff Stanger and Plaintiffs' counsel's requested fee

payment and reimbursement of costs and expenses.

Dated: August 7, 2023

Respectfully submitted,

/s/ David W. Garrison
**DAVID W. GARRISON (No. 24968)**
**JOSHUA A. FRANK (No. 33294)**
**NICOLE A. CHANIN (No. 40239)**
BARRETT JOHNSTON MARTIN & GARRISON, PLLC
Philips Plaza
414 Union Street, Suite 900
Nashville, TN 37219
Telephone: (615) 244-2202
Facsimile: (615) 252-3798
dgarrison@barrettjohnston.com
jfrank@barrettjohnston.com
nchanin@barrettjohnston.com

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on August 7, 2023, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon the following:

Robert Earl Boston (TN Bar No. 009744)
HOLLAND & KNIGHT (Nashville)
511 Union Street, Suite 2700
Nashville, TN 37219
Telephone: (615) 244-6380
bob.boston@hklaw.com


Ariel Cudkowicz (MA Bar No. 550577)
Hillary J. Massey (MA Bar No. 669600)
Michael Steinberg (MA Bar No. 690997)
SEYFARTH SHAW
Two Seaport Ln #1200
Boston, MA 02210
Telephone: (617) 946-4800
acudkowicz@seyfarth.com
hmassey@seyfarth.com
msteinberg@seyfarth.com

*Attorneys for Defendant*

/s/ David W. Garrison
DAVID W. GARRISON
**BARRETT JOHNSTON
MARTIN & GARRISON, PLLC**
